FILED'06 NOV 17 14:5USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCHAFFER LOGGING, LLC,          )
an Oregon Limited Liability    )
Company                        )
                Plaintiff,     )    Civil No.   06-6208-TC
                               )
        v.                     )
                               )
COMMONWEALTH INSURANCE         )    FINDINGS AND RECOMMENDATION
COMPANY OF AMERICA,            )
an Oregon Corporation,         )
                               )
                               )
                Defendant.     )
_____)

COFFIN, Magistrate Judge.

Presently before the court is defendant's motion (#6) for summary judgment. For the reasons that follow, defendant's motion should be granted.

## Standards

Summary judgment is appropriate where "there is no genuine

1 - FINDINGS AND RECOMMENDATION

issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact is resolved against the moving party, Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976), and any inferences drawn from the underlying facts are viewed in the light most favorable to the nonmoving party. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect

to which she has the burden of proof.  Id. at 323-24.

## Discussion

Plaintiff's yarder, which is insured by defendant, was severely damaged after it collapsed during operation.  Plaintiff alleges that defendant wrongfully denied its claim of loss, resulting in $140,000 in damages.  Defendant contends that the loss resulted from plaintiff's noncompliance with the manufacturer's instructions, and is excluded from coverage for that reason.  Upon analysis of the facts, which are not disputed, the court agrees.

### 1.  The Yarder

Plaintiff's yarder is the Thunderbird TMY 50, a mobile apparatus used at logging sites to lift a load (or a "turn") of felled logs and retrieve the load from the logging site to the area surrounding the front of the yarder assembly (the "landing platform").  The yarder consists of a tower, which rests on a chassis and is hoisted upright by a hydraulic engine, three guylines used to support the tower, a skyline and mainline used to haul in logs, and engines that enable an operator to manipulate the various lines.[1]

---

[1]There is some terminological discrepancy in the record. The parties and affiant refer to the tower as a "boom," and the appraiser who inspected the yarder at issue appears to use the terms "tower" and "boom" interchangeably.  The manufacturer's specifications for the Thunderbird TMY 50 use only the term "tower" to describe the structure supported by the guylines.  For ease of reference, this opinion, too, uses the term "tower" to describe that structure.

3 - FINDINGS AND RECOMMENDATION

Because the function of the guylines is critical to the
court's findings and recommendation, it is useful to explain at the
outset how the yarder works.   Three guyline cables extend from
winches at the base of the tower to its top.   Each guyline cable
then runs over a pulley attached to the top of the tower, extends
outward from the pulley at an angle (recommended to exceed 45
degrees), and is anchored to respective stumps situated in a fan-
like configuration around the back of the yarder.   A separate line
("skyline") extends from the front of the tower and is anchored to
the ground at the site of the felled trees that require transport.
The logs are hooked to a carriage that rests on the skyline, and as
the carriage is drawn to the yarder, the logs approach the landing
platform, where they are positioned and then unhooked.

Once   tightened   with   hydraulic   motors,   the   guylines
counterbalance the force of the incoming load and function together
to ensure that the tower remains upright.   When the tension of the
skyline   and   the   force   of   the   weight   of   the   incoming   logs   are
distributed   sufficiently   evenly   among   the   guylines,   the   yarder
remains stable.   If the forces are not properly balanced among the
guylines, the yarder becomes vulnerable to collapse.   Similarly,
when   the   yarder   is   rigged   so   that   the   angle   created   by   the
guyline's extension to the anchor stump is less than 45 degrees, an
uneven   application   of   force   may   result,   making   the   tower   less
stable.   The tower cannot remain upright during operation without

4 - FINDINGS AND RECOMMENDATION

a stabilizing guyline configuration.

        2.    The Loss Event and Its Cause

        In 2004, plaintiff purchased the yarder, then approximately 20 years old.  After inspecting it and finding no problems, plaintiff used the yarder until the March 2, 2005, accident that gave rise to this case.  On that day, as a turn of felled logs was being hauled to the landing site, a guyline pulley broke away from the yarder causing the yarder tower to collapse.  The operator was injured in the incident and has been unable to recall the events leading to the yarder collapse.

        The record contains the affidavit of one of plaintiff's employees who witnessed the event.  The witness, who claims 20 years of logging experience, averred that, at the time of the collapse, the weight of the turn was borne entirely by one guyline, rather than all three.  Affidavit of Rodney Odle, at 2 ("[A]t the time of the accident, the remaining [two] guylines were slack."). According to the witness, "There is no question in my mind that the direct cause of this accident was the fact that the load being hauled in at the time of the accident was creating force on one guyline only. . . ."  Id. at 1-2 (emphasis added).

        The guyline that bore the load did not break, but the pulley and pin holding that guyline came apart from the yarder.  Because the guyline did not break, the only way that the pulley and pin could have come apart from the yarder would have been due to a

break in the pulley or pin.  The pulley and pin have not been
recovered, despite a search of the area.  The witness averred that
a weakness or defect in the missing pulley or pin could have
contributed to the collapse.

The witness further stated that the guyline that bore the
force of the incoming load was "hooked up too short under the
circumstances," that is, rigged at a steep angle, id. at 2, which
evidence in the record indicates can create instability.

Approximately a month after the accident, an appraiser hired
to inspect the broken yarder submitted a written report to
plaintiff describing his conclusions concerning the cause of the
damage.  Defendant's Statement of Concise Material Facts, Exhibit
4.  After reviewing the scene of the accident and the damaged
yarder, and after interviewing individuals who were present, the
appraiser made the following findings: (1) the yarder failed during
operation, when the engine used to haul in logs was fully engaged;
(2) the force of the load was not distributed sufficiently equally
among the three guylines; rather, it was borne by a single guyline
that was "not capable of supporting the load being imposed on it";
(3) the angle of the guyline that bore the load was "far steeper
than it should have been"; and, (4) because the overloaded guyline
did not break, and because the pulley and pin that supported it
broke apart from the yarder, it is apparent that the pin supporting
the pulley failed when subjected to the undistributed force.  Id.

at 11-13.

The appraiser also noted the worn condition of the pulleys and pins retrieved from the slack guylines and suggested that the pulley and pin on the overloaded guyline may also have been in a deteriorated condition at the time of the accident.  That wear, according to the appraiser, could have contributed to the failure of the pin.  The appraiser concluded that, ultimately, "The root cause of the incident is that the yarder was not rigged correctly, this resulted in overloading of the components which appears to have initially caused a pin failure; the back up safety device ... failed as well, the next guyline which the load transferred to failed due to again overloading resulting in the tower collapsing." Id. at 22.

In the appraiser's view, the operator failed to comply with manufacturer's specifications in two respects.  First, by setting a guyline at an angle that was "far too steep," the operator rigged the angle "too short" in comparison with manufacturer's recommendations, which call for an angle to exceed 45 degrees. Indeed, under a caption in the manufacturer's instruction manual reading, "RECOMMENDED GUYLINE ANGLES, "CAUTION," the manual warns, "In the event load bearing guylines must be located at a steeper than 45° angle, greater care must be taken in yarding to avoid possible damage to tower."  Defendant's Supplemental Briefing, Exhibit 1, at 45.  Second, the appraiser explained that "the

pattern of the guylines laid out in the bush should have been so
that the machine is always pulling on a minimum of two guylines.
This was not the case . . . ." Defendant's Statement of Concise
Material Facts, Exhibit 4 at 11.    The manufacturer's
recommendations direct the yarding operator to "always maintain two
guylines opposite pull."   Defendant's Supplemental Briefing,
Exhibit 1, at 45.   According to the manual, that configuration is
so critical to the stability of the yarder that, if two guyines
cannot be adequately rigged at the selected site, the operator is
instructed to "[m]ove [the entire yarder] if necessary." Id.[2]

The appraiser also noted that his conclusions concerning the
cause of the accident substantially concurred with those of the
owner of the yarder and the foreman.   Defendant's Statement of
Concise Material Facts, Exhibit 4 at 5.

3. Analysis of Coverage under the Policy

Based on the above information, defendant argues that the
accident is not a covered event under the policy.   The policy
insures against "all risks of direct physical loss of or damage to"
the yarder, subject to the following relevant exclusions:

///

---

[2]An OSHA report reviewing the same accident reached the same
conclusion, stating, "Had the employer received the operator's
manual and provided proper training, the machine could have been
set up properly within guyline specifications ... If proper
placement would have been used, the load could have been equally
shared on the guylines; it would have been unlikely that there
would have been failure." Id.

8 - FINDINGS AND RECOMMENDATION

3.    THIS POLICY DOES NOT INSURE AGAINST:

> ....

> (e)    Loss or damage caused by or resulting from ... <u>mechanical breakdown</u>, latent defect or <u>wear, tear or gradual deterioration</u> nor loss or damage resulting therefrom ...

> ....

> (j)    Loss or damage caused by or resulting from:

>> ....

>> (iii) <u>operating contrary to any instructions or recommendations set out in the manufacturers' specifications</u> or capacity tables.

Notice of Removal to Federal Court, Exhibit A at 9, 10 (emphasis added).    Thus, the policy does not cover loss resulting from noncompliance with manufacturer recommendations or from the failure of worn or defective parts.    In defendant's view, the record, when evaluated in the light most favorable to plaintiff, points <u>only</u> to those causes for the loss.    Plaintiff contends that the record does not disclose a causal connection between the rigging of the yarder and its failure.    The record simply cannot support plaintiff's position.

Both the witness to the accident and the appraiser explained that  a single guyline bore the force of the incoming turn of logs, a practice that contravenes the manufacturer's recommendation to distribute the force between two guylines, at minimum. Both

9 - FINDINGS AND RECOMMENDATION

attribute the failure of the pin supporting the guyline pulley to the increased force.   Both also note that the weight-bearing guyline was rigged at a steep angle, which, according to the manual, would have required great care in operation (as opposed to operating the yarder with two slack lines).   According to that evidence, the loss or damage would be excluded under clause (3)(j)(iii).

Both the witness and appraiser also posited that wear or defect in the pin or pulley might have contributed to the pin failure.   Because the pin and pulley have not been retrieved, it is not possible to know whether they were worn or defective.   However, the inability to show that the missing parts were defective does not create a genuine issue of material fact concerning whether, ultimately, the failure of the pin was caused by the improper rigging.

Plaintiff has not adduced any evidence demonstrating an issue of fact concerning whether the accident resulted from the operator's failure to adequately distribute the force of the load among the guylines as the manufacturer's instructions advised. Thus, the resolution of this matter is straightforward:  The loss is excluded under section (3)(j)(iii) of the parties' contract, and defendant is therefore entitled to judgment as a matter of law.

///

///

10 - FINDINGS AND RECOMMENDATION

## Conclusion

Defendant's motion for summary judgment (#6) should be granted.

DATED this  17  day of November, 2006.

THOMAS M. COFFIN
United States Magistrate Judge

11 - FINDINGS AND RECOMMENDATION